UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JACOB S. BROWN,

Plaintiff,

v.

COMM. SHERYL RAMSTAD-HVASS, DEPT. OF CORRECTIONS; WARDEN DAVID CRIST; IND. DIR. JOHN GALZKI; PROG. DIR. LINDA HARDER; PROG. DIR. MARY MCCOMB; HEARING OFF. PETE BJURSTROM; R.N. SUPVR. CHERYL HAGEN; LT. MICHAEL SEATH; LT. MICHELLE SMITH; LT. ROBERT CRAIG; IND. SUPVR. WAYNE GUTTSEN; LABTECH PAT WENDELL; CHRIS CEMAN, M.D.; CMS PHIL JACKSON; CSC TRACY HOSKING; OMBUDSMAN DAVID LARSON; ALL IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES,

Defendants.

Civil No.01-726 (RHK/ESS)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Plaintiff Jacob S. Brown's motion for a temporary restraining order against the Defendants [Docket No. 28]. Plaintiff seeks injunctive relief to prevent the Defendants from requiring his participation in a "Lifer Group" and from transferring him to a correctional facility in Rush City. Id. On December 18, 2001, Defendants filed a response to Plaintiff's motion. [Docket No. 32]. The undersigned issued an Order disposing of several other motions brought by the Plaintiff but specifically reserved the motion for a temporary restraining order for submission by report and recommendation [Docket No. 35].

This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and these proceedings have been

FILED FEB 01 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, the Court recommends that Plaintiff's motion for a temporary restraining order be denied.

## I. BACKGROUND

Plaintiff is currently incarcerated at the Minnesota Correctional Facility in Stillwater [Docket No. 33]. He has been serving a life sentence for First Degree Murder since August 1988. Id. Plaintiff has been participating in a Lifer Group, a voluntary group for inmates serving life sentences. Id. The Lifer Group is organized into three Phases: Phase I addresses criminal thinking and risk factors for re-offense; Phase II addresses the same factors, but does so in the context of the particular offenses of the inmates; Phase III is a support group that addresses particular topics related to the matters covered in the earlier Phases. Id. Plaintiff completed Phase I and it was anticipated that he would complete Phase II by January 1, 2002.

On November 21, 2001, Plaintiff attended his first Lifer Hearing. Id. An inmate's first Lifer Hearing occurs approximately three years before an inmate is eligible for parole. Id. Plaintiff will be eligible for parole on December 17, 2004. At the Lifer Hearing, the Commissioner of Corrections, among others, reviewed Plaintiff's 14 years of incarceration, including the activities and programs in which the Plaintiff participated. Id. The Commissioner of Corrections recommended that Plaintiff continue to participate in the Lifer Group. The Commissioner also informed the Plaintiff that he would be allowed to transfer to another facility when his custody level permits such a transfer. Id. According to the classification system of the Minnesota Department of Corrections, Plaintiff could be eligible to transfer to the correctional facility in Rush City in 2004. Id.

Plaintiff seeks injunctive relief to prevent the Defendants from requiring his participation in the Lifer Group and from transferring him to a correctional facility in Rush City.

## II. DISCUSSION

### A. Ripeness

Initially, the Court is concerned that the issues raised in Plaintiff's motion are not ripe. The question of ripeness touches upon the Court's jurisdiction. Vogel v. Foth and Van Dyke Associates, Inc., 266 F.3d 838, 840 (8th Cir. 2001). The Court has a duty to raise questions about its jurisdiction sua sponte. See Missouri v. Cuffley, 112 F.3d 1332, 1334 (8th Cir. 1997).

The ripeness doctrine seeks to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. Vogel, 266 F.3d at 840. However, a Plaintiff need not wait until a threatened injury occurs, but the injury must be "certainly impending." Paraquad, Inc. v. St. Louis Housing Authority, 259 F.3d 956, 958-59 (8th Cir. 2001)(quoting Employers Ass'n v. United Steelworkers AFL-CIO- CLC, 32 F.3d 1297, 1299 (8th Cir.1994)). Given this standard, the Court is not convinced that the issues raised in Plaintiff's motion are ripe.

Plaintiff seeks to prevent the Defendants from requiring his participation in the Lifer Group. The evidence suggests that participation in the Lifer Group is voluntary, not mandatory, that Plaintiff has been participating in the Lifer Group, and that the Defendants have done nothing more than "recommend" that he continue in the Lifer Group. Plaintiff asserts that he was "directed" to continue with the Lifer Group [See Docket No. 28]. Apart from Plaintiff's characterization of the Commissioner's statements, there is no evidence to support the proposition that the Defendants intend to require Plaintiff's participation. Consequently, the Court fails to find the threat of an "impending" injury.

Similarly, there does not appear to be an "impending" threat to transfer the Plaintiff to the correctional facility at Rush City. The Defendants maintain that the facility in Rush City has a

lower security level than the facility in Stillwater, where Plaintiff currently resides [See Docket No. 33]. The Defendants also maintain that, because of Plaintiff's "custody level," he will not be eligible for transfer to the facility in Rush City until 2004, at the earliest. Furthermore, the Defendants maintain that the Commissioner informed Plaintiff that he would be "allowed" to transfer to another facility when he becomes eligible to do so. Id. Plaintiff maintains that the Commissioner said that he would be transferred; he also maintains that the transfer to Rush City would be retaliatory [Docket No. 28]. Finally, he argues that he currently enjoys convenient access to numerous resources to aid him in the prosecution of his claim and a transfer would "virtually impair" his "ability to meet the burden of his claim(s)." Id. Because any such transfer in not anticipated until 2004, the "threat" to transfer Plaintiff to Rush City is not "certainly impending." Furthermore, because Rush City has a lower security level than Stillwater, it is not even clear that the statement of the Commissioner constitutes a "threat." Plaintiff has not explained how the resources in Rush City are inadequate in comparison to those in Stillwater; thus, it is unclear how his transfer to a less secure facility would be retaliatory.

For these reasons, the Court should deny Plaintiff's motion on the ground that it is not ripe for adjudication. However, should the Court decide that the matter is ripe, Plaintiff's motion should be denied on the merits.

B. Temporary Restraining Order Standard

In order to prevail on a motion for a temporary restraining order, the Court must weigh four factors. Specifically, the Court must determine: 1) the threat of irreparable harm to the movant; 2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; 3) the probability that movant will succeed on the merits; and 4) the public interest. Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 112 (8th Cir. 1981). The

primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief. Kansas City South. Transport v. Teamsters Local 41, 126 F.3d 1059, 1066 (8th Cir. 1997). The burden on the movant is a heavy one where granting the preliminary injunction will give the movant substantially the relief he would obtain after a trial on the merits. Sanborn Manufacturing Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993).

The first Dataphase factor is the threat of irreparable harm. The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297 (8th Cir. 1996). Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate. Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546 (4th Cir. 1994); see also Acierno v. New Castle County, 40 F.3d 645 (3rd Cir. 1994)(the injury created by the failure to issue injunction must be of peculiar nature so that compensation in money cannot atone for it); Signode Corp. v. Weld-loc Systems, Inc., 700 F.2d 1108 (7th Cir. 1983)(defendant's ability to compensate plaintiff in money damages precludes issuance of preliminary injunction); Jayaraj v. Scappini, 66 F.3d 36 (2nd Cir. 1995)(where monetary damages may provide adequate compensation, preliminary injunction should not issue). In his Amended Complaint, Plaintiff seeks compensatory damages in addition to injunctive relief. [Docket No. 12]. This suggests that Plaintiff can be adequately compensated with money damages. Furthermore, as mentioned above, it is unclear in what way the Commissioner's actions constitute a threat of harm, not to mention *irreparable* harm. Further participation in the Lifer Group would likely help Plaintiff when he becomes eligible for parole; likewise, a transfer to a lower security facility is not generally considered an injury. In addition, any harm resulting from a transfer to a lower security facility can be remedied later by ordering Plaintiff's return to the

facility in Stillwater. See Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996)(upholding district court's order to return inmate to sending institution upon finding that his transfer was retaliatory). The Court concludes that the Plaintiff has not demonstrated that he will suffer irreparable harm if the injunction is not granted.

The second Dataphase factor is the state of the balance between this harm and the injury that granting the injunction will inflict on the Defendants. Because the Defendants maintain that they do not intend to require Plaintiff's participation in the Lifer Group or transfer him to another facility in the near future, they would suffer very little harm by the granting of the injunction.[1] The Defendants argued that they would suffer a two-fold harm if the Court granted Plaintiff's motion. [See Docket No. 32]. First, the Court's decision would have a chilling effect on the Commissioner, who would, in the future, be reluctant to encourage participation in the Lifer Group. Id. Second, the Court's decision would encourage other inmates to engage in frivolous litigation in response to any order to which they object; such a climate "could significantly disrupt the administration of the facility." Id. The Defendants' concerns address secondary effects of the restraining order. They do not address the issue at hand, that is, the harm suffered by the Defendants if they are not permitted either to require Plaintiff's participation in the Lifer Group or to transfer him to Rush City. The Defendants repeated these concerns in addressing the fourth Dataphase factor, the public interest; consequently, the Court reconsider those concerns below. With respect to the second factor, the Court cannot find that the balance of harms tips in the direction of either party.

The third Dataphase factor is the probability that movant will succeed on the merits. This is the most significant factor. See Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d

---

[1] Of course, as the Court has suggested, the Defendants' assertion that they do not intend to take these actions equally suggests that Plaintiff will suffer no harm if the relief is *not* granted.

80, 83 (8th Cir. 1995). The Court is not convinced that Plaintiff is likely to succeed on the merits. In support of his argument, Plaintiff cites Goff, supra, and State ex rel. Morrow v. LaFleur, 590 N.W.2d 787 (Minn. 1999). These cases do not support the merits of Plaintiff's case. In Goff, the Eighth Circuit affirmed a District Court order that an inmate be returned to a correctional facility because the facility had a retaliatory motive for his transfer. Goff merely confirms that the Court can grant relief in the event that Plaintiff is subjected to a retaliatory transfer. Because Plaintiff has not been subjected to a transfer, retaliatory or otherwise, Goff is distinguishable. Plaintiff cites Morrow for the proposition that an inmate's "program participation must be rationally related to the societal interest that defendant commit no new offense." [Docket No. 28]. However, Morrow upheld the requirement that the inmate participate in a sex offender treatment program. Morrow, 590 N.W.2d at 796. In addition, considering the evidence submitted by the Defendants with regard to the Lifer Group, there is a strong argument that participation in the Lifer Group does further the societal interest that its participants commit no new offense. For these reasons, the Plaintiff has not demonstrated a likelihood of success on the merits.

The fourth Dataphase factor is the public interest, if any. This factor tips in favor of the Defendants. As stated above, the Defendants are concerned that a restraining order would have a two-fold "ripple effect" on the administration of the facility. It would discourage the Commissioner from recommending participation in the Lifer Group, and it would encourage other inmates to engage in frivolous litigation in response to any order to which they object. Citing Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987), the Defendants maintain that the micro-management of prison officials has been condemned by the Supreme Court. Turner did say that "courts should be particularly deferential to the informed discretion of corrections officials." Turner, 482 U.S. at 90, 107 S.Ct. at 2262. At the same time, Turner struck down prison regulations relating to the rights of

inmates to marry. The Defendants have raised important concerns about the public interest. Likewise, an inmate's concerns about program participation and retaliatory transfers affect rights that are legitimate matters of public interest. However, because Plaintiff has failed to demonstrate a likelihood of success on the merits, the Court concludes that, on balance, the public interest favors the Defendants' position.

## III. RECOMMENDATION

The Court is not convinced that Plaintiff's motion for a temporary restraining order is ripe. Plaintiff seeks to restrain the Defendants from doing things that, according to them, they have no intention of doing. Consequently, Plaintiff's motion should be denied as it presents no actual controversy for adjudication. However, should the Court conclude that Plaintiff's motion is ripe, the Plaintiff has failed to demonstrate that he is entitled to relief under the Dataphase factors. On that basis, Plaintiff's motion should be denied. Accordingly, based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED**:

1. That Plaintiff's Motion for a Temporary Restraining Order be DENIED on the ground that it is not ripe for adjudication. [Docket No. 28].

Dated: February 1, 2002

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it

is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.