224 F.3d 607, 617 (7th Cir. 2000), Jenkins v. Haubert, 179 F.3d 19, 27 (2nd Cir. 1999).

At first blush, the Plaintiff's claim, which seeks an invalidation of the disciplinary ruling which resulted in his being committed to segregation for a period of 210 days, would appear to fall outside of Heck's applicability, since it challenges the conditions, rather than length of the Plaintiff's confinement. However, upon close examination, we note that, during the time that the Plaintiff was in segregation, he was prohibited from earning statutory good time credit. See Exhibit C attached to Affidavit of Greg Lindell. As a result, if we to effectively invalidate the ruling, which imposed that punishment, by an award of damages, on the basis of some supposed procedural violations, the Plaintiff would be entitled to the reinstatement of that good time, which is the exact result prohibited by Heck.[11] Therefore, absent some show-

[11]Further, even if Heck did not bar the Plaintiff's claim, he would still have to show that he had a constitutionally protected liberty interest in being free from the segregation to which he was punished, by showing that such a punishment was an unusual hardship, or a dramatic departure from ordinary prison life. See, Sandin v. Conner, 515 U.S. 472 (1995). Provided he could make that showing, he would then be faced with having to show that the Defendants violated the minimal due process rights that the Supreme Court has attached to prison Disciplinary Hearings. See, Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974)(holding that disciplinary hearings are not criminal Trials, and so, do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings). The Supreme Court has held that a (continued...)

ing by the Plaintiff, that his disciplinary punishment was reversed, expunged, invalidated, or called into question, by the issuance of a Federal Habeas Writ, the Plaintiff cannot state a claim under Section 1983. As a result, we recommend that the Defendants' Motion for Summary Judgment be granted, as to the Plaintiff's claims of Due Process violations.

---

(...continued)
prisoner is entitled to: twenty-four hour written notice of the Hearing; a written statement by the factfinder which describes the evidence relied upon, and the reasons for his/her decision; call witnesses and present evidence, unless doing so would jeopardize institutional safety or correctional goals; and, in certain cases, such as where the inmate is illiterate, to the aid of a fellow inmate, or help from the staff. Id. at 563-70. Beyond these considerations, the Supreme Court has determined that, in order to comply with constitutional Due Process, at least "some evidence" must support the finding of a disciplinary sanction.

Here, the Plaintiff was provided more than twenty-four hours notice of his Hearing, he was provided the requisite written statement by the factfinder, and he was permitted, in fact encouraged, to receive help from a representative in presenting evidence at the Hearing. See, Plaintiff's Exhibits 62-63, and 68. Clearly, based on that written statement, there was "some evidence" to support the conclusion that the Plaintiff had committed the charged offenses, including the testimony of Jackson. It is unlikely that the remainder of the Plaintiff's claims state procedural violations which, under Wolff, rise to the level of a constitutional claim, as they assert a right to processes which were not enunciated by the Supreme Court in that decision. Therefore, we independently conclude that the Plaintiff's Due Process claim would not survive the Defendants' Motion for Summary Judgment, even if it were not barred by Hecks.

d. The Plaintiff's Equal Protection Claims.

The Plaintiff complains that the Defendants violated his Equal Protection rights by discriminating against him, on the basis of his race and religion, when they denied him raises and promotions, and prevented him from transferring job assignments without losing his pay or seniority status. In addition, he claims that the Defendants discriminated against him on the basis of race and religion, when they denied him the opportunity to subject Jackson to a polygraph test prior to his disciplinary hearing.

Generally, the Equal Protection Clause of the Constitution requires the Government to treat similarly situated people alike. Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), citing Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Therefore, in order to present a viable Equal Protection claim, the Plaintiff must demonstrate that he was similarly situated to those who allegedly received favorable treatment. Id.

As to the Plaintiff's claim, that he was denied promotions and raises on the basis of his race and religion, he has not presented any evidence that similarly situated employees -- that is, employees in similar jobs, with similar qualifications, and with similar lengths of employment, but who did not share his religion and race -- were provided with the promotions and raises that he claims to

have been wrongfully denied. Accordingly, the Plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," and the Defendants are entitled to Summary Judgment on these claims. Celotex Corp. v. Catrett, supra at 322.

However, with respect to the Plaintiff's allegation, that he was not permitted to transfer to another job within MINNCOR upon his request, so as to maintain his pay rate and seniority level, he has identified three other inmates who, he claims, received a transfer upon their request, without a decrease in pay. However, this assertion is countered by competent evidence, from the Defendants, that the three inmates, whom the Plaintiff identified, were not transferred on their own request, but had received administrative transfers. See Affidavit of John Galzki. The Defendants aver that inmates are never transferred upon request, but that they may be transferred when work areas expand, or when changes occur. Id. Therefore, given the evidence proffered by the Defendants, which is not contradicted in this Record, the referenced three inmates were not, as the Plaintiff has alleged, similarly situated to the Plaintiff, since they were transferred administratively, and not by their own request. Therefore, again, the Plaintiff has failed to satisfy the threshold requirement by showing that he was similarly situated to those whom, he contends, received favorable treatment.

Lastly, with respect to the Plaintiff's contention, that his Equal Protection rights were violated when he was denied the opportunity to subject Jackson to a polygraph test, we find, again, that he has failed to meet the threshold requirement of stating such a claim. The Plaintiff asserts that "[p]olygraph requests from and for similarly charged non-[J]ewish or non-mulatto inmates, were granted," while his were not. This bare allegation, however, is insufficient to sustain his burden of "establish[ing] the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322. No such disparity has been shown in the Record submitted, notwithstanding the fact that the Defendants have offered evidence that there actions with respect to the Plaintiff were consistent with their standard procedures. Affidavit of John Galzki ("Galzki Affidavit"), at ¶¶ 2, 5, 6, 7, 8, 9, and 10. The Plaintiff has not shown to the contrary. Accordingly, we recommend that the Defendants' Motion for Summary Judgment on the Plaintiff's Equal Protection claims be granted.

f. The Plaintiff's Retaliation Claims.

Lastly, we address the Plaintiff's claim, that the Defendants wrongfully retaliated against him, for exercising his constitutionally protected right to free speech, and to freedom

of religion. The Plaintiff has asserted several acts of retaliation. First, the Plaintiff contends that, in retaliation for his having refused to attend Jackson's sermons, Jackson sabotaged his pay records, such that he was not paid for two weeks of work, downgraded his work so as to deny the Plaintiff pay raises, and instructed other Defendants to lay the Plaintiff in or off more frequently than other employees. Further, he maintains that his complaints about Jackson were ignored, in retribution for his having filed those complaints. The Plaintiff asserts that, in retaliation for his filing that complaint, Jackson filed false charges of assault against him.

In addition, he alleges that the actions taken by the various prison officials, during his Disciplinary Hearing -- including the denial of his request for a polygraph test, the grant of a continuance, the suggestion that the Plaintiff be represented, the finding of guilty, the denial of his request for a tape of the Hearing, and the sustaining of his punishment on appeal, were all retaliatory acts. Finally, he asserts that the actions, which were taken by the Health Care staff, as to his folliculitis barbae, and the drawing of his blood, were further acts of retaliation.

Our Court of Appeals has adopted the established rule that "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken

for a different reason, would have been proper." Freeman v. Blair, 793 F.2d 166, 178 (8th Cir. 1986), vacated on other grounds, 483 U.S. 1014 (1987); Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990). Under this rule, otherwise constitutional actions, if taken in retaliation for a constitutionally protected action of an inmate, may amount to a constitutional violation that is actionable under Section 1983. See, Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Therefore, even though we have found, that the Plaintiff has failed to state a claim for a violation of the Sixth, Eighth, and Fourteenth Amendment, the Defendants' acts, which have been identified by the Plaintiff, may be adequate to state a constitutional claim of retaliation.

In retaliation claims, where an inmate contends that, in retaliation for having exercised a constitutionally protected right, the prison staff took some act which would not, on its own, amount to a violation of an inmate's constitutional rights, the inmate "must prove that a desire to retaliate was the actual motivating factor behind the" allegedly retaliatory act, such as transfer or harassment. See, e.g., Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999), Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir. 1996). Thus, the Plaintiff must not only show that he was engaging in some constitutionally protected activity, and that he suffered some adverse action at the hands of prison officials, but he must also demon-

strate that, but for the retaliatory motivation of the officials, the acts would not have been taken. See, Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999); Carter v. McGrady, 292 F.3d 152, 157-58 (3rd Cir. 2002). Cunningham v. O'Leary, 2002 WL 1401145 (7th Cir., June 26, 2002)(holding that, "[t]o survive summary judgment on the retaliation claim [the plaintiff] needed evidence that the defendants harbored a retaliatory motive absent which he would not have received disciplinary reports, unfavorable cell assignments, transfer, and would have received prison jobs and visitation privileges); citing Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996). Here, there is no dispute that the Plaintiff has constitutionally guaranteed rights of free speech, and of the free exercise of his religion. Nevertheless, the Plaintiff has failed to show that, but for a retaliatory motive related to his exercise of those rights, the actions he complains of would not have been taken.

First, as a matter of law, the Plaintiff's contention, that Jackson wrongfully accused him of assault, and that he was wrongfully disciplined, cannot support his retaliation claim. In the context of an alleged retaliatory disciplinary action, "'if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prison rules or regulations, then the prisoner's claim that the discipline was retaliatory must fail.'" Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.

1994) quoting Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993) cert denied 512 U.S. 1209 (1994). As our Court of Appeals has explained:

> The critical inquiry "is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the prisoner committed the charged violation of the prison regulations."

Cornell v. Woods, 69 F.3d 1383, 1389 (8th Cir. 1995), quoting Henderson v. Baird, supra at 469.

In this case, because the prison disciplinary committee found -- based on some evidence, including Jackson's testimony -- that the Plaintiff violated several prison rules, during his run-in with Jackson in the tool crib, the Plaintiff cannot prevail on his retaliatory discipline claim. Here, the prison did no more than punish the Plaintiff for acts that he was not entitled to perform, and the imposition of such punishment cannot, as a matter of law, form the basis of a retaliation claim. See, Goff v. Burton, supra at 738.

Further, we conclude that the Plaintiff's assertions, that the Health Care staff of the prison denied him access to a beard trimmer, and allegedly acted without regard for his low blood sugar and hemophobia, in retaliation for his having filed various prison complaints, and/or for having published a letter that was critical of

the prison, fail to state an actionable claim of retaliation under Section 1983. Other than the Plaintiff's bare assertion, that the Health Care staff's actions were part of a prison-wide conspiracy to retaliate against him for having exercised his First Amendment rights, the Plaintiff has simply made no showing that any of the actions, which were taken by the Defendants, who were named in his Eighth Amendment claims, were in any way motivated by a desire to retaliate against him. "[B]are allegations of malice on the defendants' part are not enough to establish retaliation claims against them." Shehee v. Grimes, 2002 WL 857732 * 1 (6th Cir. May 3, 2002); citing Crawford-El v. Britton, 523 U.S. 574, 588 (1998).

We turn then to the Plaintiff's claim that Jackson's actions with respect to his pay, including pay raises, and lay offs/ins, were in retaliation for the Plaintiff having declined to attend Jackson's religious services. We find that the Plaintiff has not met his burden of showing that, but for some retaliatory motive, these complained of actions would not have been taken.

As to the Plaintiff's claim that he was downgraded by Jackson, and that he was, therefore, denied a raise, the Plaintiff has failed to present any evidence that he was downgraded, or that, in fact, he was denied a raise that he would otherwise have received had he not exercised his constitutional rights. In his job evaluation, which covered the period from October 1, 1999. through

December 31, 1999, Jackson found the Plaintiff to be "Average" in each category, and recommended that his pay be increased. Plaintiff's Exhibit 15. Likewise, in the evaluation for the period from January 1, 2000, through March 31, 2000, the Plaintiff received all "Average" rankings, and Jackson recommended a raise, despite having expressed his belief that the Plaintiff was capable of "a better grade of work," and his expressed desire "to see an improvement." Plaintiff's Exhibit 17. For the period from April 1, 2000, through June 30, 2000, the Plaintiff again received scores of "Average" and, on this occasion, Jackson recommended that the Plaintiff be maintained at the same pay rate. Plaintiff's Exhibit 33. Therefore, the Plaintiff has presented no evidence that Jackson ever "downgraded" his work as an act of retaliation.

Further, although the Plaintiff claims to have been wrongfully denied a further raise after his evaluation on June 30, 2000, and alleges that the cause was Jackson's retaliation, owing to the Plaintiff's refusal to attend religious services, the Plaintiff has presented no rebuttal evidence which counters the Defendants' showing that the Plaintiff "was not eligible to receive more than one dollar an hour while assigned in the tool crib because that is the maximum pay for the position of tool room clerk." Galzki Affidavit, at 3. By the Plaintiff's own admission, after his pay increase of March 31, 2000, he was being paid $1.00 per hour.

[Plaintiff's] Affidavit in Support of Summary Judgment ("Plaintiff's Affidavit") at 3. Accordingly, the Plaintiff has failed to show that, but for a malicious intent to retaliate, his being subject to a recommendation that his pay be maintained at the same level, would not have otherwise occurred.

Likewise, the Plaintiff has asserted that he was retaliated against by Jackson who, he alleges, instructed other Defendants to lay the Plaintiff in or off more frequently than other MINNCORP employees in violation of the seniority system. He has asserted, in his Affidavit, that he was third in seniority, and that he was wrongfully laid-in which constituted a violation of the seniority system. However, even assuming that the Plaintiff was the third most senior employee in his program, the Plaintiff has only cited to evidence that seniority plays a factor in the order in which inmates are laid-off from work, not in which they are laid-in. See, Plaintiff's Affidavit, at 3, citing "Stillwater Policy & Procedure A-10." Although we do read this policy as stating that a seniority system is followed for lay-offs, it does not state that such a system would be followed for lay-ins. The A-10 policy clearly differentiates between lay-ins and lay-offs, and the Plaintiff has presented no evidence to refute the Defendants' evidence that, when lay-ins were necessary due to a downturn in the amount of available work, a "a rotation schedule [was] developed so

[Plaintiff's] Affidavit in Support of Summary Judgment ("Plaintiff's Affidavit") at 3. Accordingly, the Plaintiff has failed to show that, but for a malicious intent to retaliate, his being subject to a recommendation that his pay be maintained at the same level, would not have otherwise occurred.

Likewise, the Plaintiff has asserted that he was retaliated against by Jackson who, he alleges, instructed other Defendants to lay the Plaintiff in or off more frequently than other MINNCORP employees in violation of the seniority system. He has asserted, in his Affidavit, that he was third in seniority, and that he was wrongfully laid-in which constituted a violation of the seniority system. However, even assuming that the Plaintiff was the third most senior employee in his program, the Plaintiff has only cited to evidence that seniority plays a factor in the order in which inmates are laid-off from work, not in which they are laid-in. See, Plaintiff's Affidavit, at 3, citing "Stillwater Policy & Procedure A-10." Although we do read this policy as stating that a seniority system is followed for lay-offs, it does not state that such a system would be followed for lay-ins. The A-10 policy clearly differentiates between lay-ins and lay-offs, and the Plaintiff has presented no evidence to refute the Defendants' evidence that, when lay-ins were necessary due to a downturn in the amount of available work, "a rotation schedule [was] developed so

that the same offenders [we]re not on lay-in status each time one occur[red]," and that the Plaintiff "was not laid-in more than other inmates who worked in the same shop that he did during that time."[12] Galzki Affidavit at 3. Again, the Plaintiff has not satisfied his burden of showing that, but for some retaliatory motive, he would not have been subject to the actions of which he has complained.

The Plaintiff also alleges retaliatory conduct by Guttsen and Larson who, he claims, ignored his complaints about Jackson. We have carefully reviewed the evidence which is said to support this allegation, and find no complaint that the Plaintiff proffered to Guttsen, whom the Plaintiff describes as a MINNCORP supervisor. However, the Plaintiff's complaints about Jackson, of August 11, 2000, and August 14, 2000, were thoroughly addressed by Galzki, who is the Industry Director. See, Exhibit F attached to Galzki Affidavit. As to the complaint he filed with Larson, Larson has submitted evidence that, after filing a complaint in August of 2000, which alleged "sabotage of pay, disregard of shop seniority, being passed over for a promotion, and having to work with a parti-

[12]Although the Plaintiff submitted a series of attendance records from his job, Plaintiff's Exhibits 127-183, the Court cannot interpret those records as we are unable to ascertain what positions were held by the various persons included on the lists, nor the meaning of the various codes for the times when it appears that those persons were not present.

cular inmate," the Plaintiff subsequently sent a letter to Larson, in October of 2000, in which he stated that "he received relief with respect to issues raised in his August letter" and, as a result, Larson "discontinued any active review of those matters." Affidavit of David Larson, at 1. Therefore, the Plaintiff has failed to make any showing that his complaints were ignored, much less a showing that the named Defendants had retaliated against him for exercising his First Amendment rights.

Finally, we consider the Plaintiff's contention, that Jackson retaliated against by sabotaging his pay records, such that he was not paid in a timely fashion for two weeks of work. The Plaintiff maintains that he asked Jackson whether his failure to receive pay was due to his refusal to attend religious services, and that Jackson responded that the Plaintiff was not in his book, and commented that the Plaintiff "wasn't black enough." Plaintiff's Affidavit at 3. However, "it would trivialize the First Amendment to hold that harassment for exercising [a first amendment right] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002)(internal citations omitted). Other than the de minimis injury occasioned by not being promptly paid, the Plaintiff has alleged no other direct injury caused by his not being paid on time. Nor has the Plaintiff submitted any evidence

to show that this brief period, during which he was deprived of his rightful wages, would have been "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." See, Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001), citing Allah v. Seiverling, 229 F.3d 220, 224-25 (3rd Cir. 2000). In fact, the Plaintiff continued to work in the shop, continued to lodge complaints when he felt aggrieved, and continued to refuse to attend Jackson's services, even after he was not paid. Thus, even taking the facts in a light most favorable to the Plaintiff -- as we must -- we conclude that the Plaintiff cannot assert a cognizable Section 1983 retaliation action based on the claimed injury of not having been paid on time.

NOW THEREFORE, It is --

ORDERED:

1. That the Plaintiff's Motion for Appointed Counsel and U.S. Attorney Intervention [Docket No. 46] is denied as moot.

2. That the Plaintiff's Motion to Authenticate or Exclude Audiotape Evidence [Docket No. 50] is denied as moot.

3. That the Plaintiff's Motion to Declare Audiotape Inadmissible and Exclude It, and Hearing Request [Docket No. 57] is denied as moot.

4. That the Plaintiff's Motion for Permanent Transfer to Duluth or Rochester [Docket No. 74] is denied as moot.

5. That the Plaintiff's Motion for Courtesy Copy of Hearing Tape [Docket No. 88] is denied as moot.

6. That the Plaintiff's Motion for an Order to Cease and Desist Tampering with Evidence/Witnesses and to Replace and Deliver Audiotapes to Law Firm [Docket No. 89] is denied as moot.

7. That the Plaintiff's Motion for an Injunction to Prevent Injection or Withdraw[al] of Fluid Using Needles [Docket No. 90] is denied as moot.

AND, It is --

RECOMMENDED:

1. That the Defendants' Motion for Summary Judgment [Docket No. 60] be granted.

2. That the Plaintiff's Motion for Summary Judgment [Docket No. 52] be denied.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 3, 2002,**

a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 3, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.